UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| WILLIAM PATRICK MCADORY,<br><br>Plaintiff, | ) | |
| v. | ) | No.: 3:26-CV-345-TAV-DCP |
| OFFICER SELENT, *et al.*,<br><br>Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Patrick McAdory filed a motion for leave to proceed *in forma pauperis* [Doc. 5] in a civil rights complaint under 42 U.S.C. § 1983 concerning events that transpired while he was detained as a pretrial detainee in the Roger D. Wilson Detention Facility ("RDWDF") [Doc. 1]. For the reasons set forth below, the Court will **GRANT** Plaintiff's motion [Doc. 5], permit discrete claims to **PROCEED**, and **DISMISS** the remaining claims.

## I. MOTION TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's motion [Doc. 5] and accompanying documents [Doc. 9-1] demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 5] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902, 20% of Plaintiff's preceding monthly

income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Memorandum Opinion and Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with payment of the filing fee.

## II. COMPLAINT SCREENING

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might

later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

**B. Plaintiff's Relevant Allegations**

On March 27, 2026, Plaintiff returned to the RDWDF from court [Doc. 1, p. 5]. Correctional Officer ("CO") Selent led Plaintiff inside the pod, and they were walking to Plaintiff's cell when an inmate with whom Plaintiff had an "incompatible" slipped out of his handcuffs and used the handcuffs as brass knuckles to assault a handcuffed Plaintiff [*Id.* at 5, 6]. CO Selent "just stood there" and allowed the attack to occur "for at least 2 minutes without using his ma[c]e to try to get the inmate to stop" [*Id.* at 5]. Per Knox County policy, officers can pepper spray fighting inmates but may not intervene until security arrives [*Id.* at 6]. But CO Selent did nothing, and another inmate eventually pulled the perpetrator off Plaintiff [*Id.* at 7].

An "incompatible" is a policy Knox County follows whereby inmates who are "unsuitable for association" are kept apart [*Id.* at 6]. Therefore, Plaintiff should not have been around the inmate who assaulted him [*Id.*]. Had CO Selent done his job and seen that Plaintiff had an incompatible with someone inside the dayroom before letting Plaintiff into the pod, Plaintiff would not have been assaulted [*Id.* at 5–6]. CO Selent also failed his duty to ensure that all inmates on recreation were properly handcuffed [*Id.* at 6]. And Knox County

Supervisors failed to train CO Selent and "adopted official policies that sanctioned the unconstitutional risk of harm" [*Id.*].

As a result of the assault, Plaintiff received outside medical treatment at UT Hospital, including receiving staples to his head [*Id.* at 5, 7]. Plaintiff attempted suicide twice after this incident because it "messed up" his mental health [*Id.* at 7].

Aggrieved, Plaintiff filed the instant action for monetary damages claiming that CO Selent failed to protect him from harm and Defendants (1) adopted an unconstitutional policy that they should not intervene in an inmate-on-inmate assault "unless it is life threatening" and (2) failed to train CO Selent on how to handcuff inmates securely [*Id.* at 7, 9]. Plaintiff brings both individual and official-capacity claims against Officer Selent and official-capacity claims against Defendants Lieutenant ("Lt.") Ward, Lt. Oldham, Corporal ("Cp.") Lum, Captain Fritts, Chief Cooper, Chief Purvis, Chief Stevenson, and Captain Smith [*Id.* at 6].

**C. Analysis**

**1. Official-Capacity Claims**

By seeking relief against any individual defendant in his/her official capacity, Plaintiff is actually seeking suit against the entity "of which the officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Here, that entity is Knox County. But to state a claim against Knox County, Plaintiff must plausibly allege that Knox County's own policies or customs caused a violation of his constitutional rights. *See Monell.*, 436 U.S. at 708 (Powell, J., concurring) (explaining a municipality can only be held liable for

a constitutional violation when the violation resulted from "implementation of [the municipality's] official policies or established customs"). A policy or custom may be established by demonstrating:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Plaintiff first claims that Knox County has a policy of not permitting officer intervention in inmate-on-inmate assaults until security arrives. Next, he alleges that Knox County failed to adequately train Officer Selent regarding the incompatible policy so as to avoid inmate-on-inmate violence [*See* Doc. 1, p. 6]. But Plaintiff has not alleged any facts from which the Court could plausibly infer that he was attacked because CO Selent was not properly trained on the incompatible policy at RDWDF, because he has not alleged any facts from which the Court could plausibly infer that Knox County made training decisions reflecting a "deliberate" or "conscious" choice to be deliberately indifferent to the need for training. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Therefore, Plaintiff cannot proceed on a failure-to-train theory of *Monell* liability against Knox County as to this issue regarding incompatibles, and this claim will be **DISMISSED**.

However, the Court finds Plaintiff's first theory of *Monell* liability—that RDWDF has a policy or custom of prohibiting officer intervention in inmate-on-inmate acts of violence until backup arrives, and that this policy or custom caused him to be beaten for over two minutes while CO Selent failed to intervene—is colorable. Accordingly, this claim will **PROCEED** against Defendants in their official capacities.

### 2. Individual-Capacity Claims

Plaintiff also sues CO Selent in his individual capacity for failing to protect him from harm. The Sixth Circuit has held "that a failure-to-protect claim by a pretrial detainee requires only an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly." *Westmoreland v. Butler Cnty*., 29 F.4th 721, 728 (6th Cir. 2022) (citation omitted). Liability attaches where the defendant officer "[1] act[ed] intentionally in a manner that [2] put[] the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, and [4] by failing to do so actually cause[d] the plaintiff's injuries." *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (citing *Westmoreland,* 29 F.4th at 729).

Here, Plaintiff alleges that CO Selent bears liability in this action under a failure-to-protect theory for (1) failing to learn that Plaintiff and the attacking inmate had incompatibles, (2) failing to properly secure the perpetrator's handcuffs, and (3) standing by and failing to deploy pepper spray as Plaintiff was being beaten by the perpetrator [*See generally* Doc. 1]. The Court considers each of these allegations in turn.

Plaintiff cannot sustain a failure-to-protect claim against CO Selent on the facts advanced regarding the inmates' incompatible designation or CO Selent's alleged failure to secure the offending inmate's handcuffs. Plaintiff alleges that CO Selent was transporting Plaintiff through the pod to his cell when the attack occurred. Plaintiff also alleges that both he and the offending inmate were in handcuffs when Plaintiff was being transported. Therefore, there are no well-pled facts to suggest that CO Selent exposed Plaintiff to a substantial risk of harm without precautionary measures. And while Plaintiff maintains that CO Selent failed to properly secure the offending inmate's handcuffs, he offers no factual support for this conclusory allegation. Therefore, Plaintiff has not alleged any facts from

which "a reasonable officer in the circumstances would have appreciated the high degree of risk involved and the obvious consequences" of this particular conduct, and these discrete failure-to-protect claims will be **DISMISSED**. *See Westmoreland*, 29 F.4th at 730.

However, the Court finds that Plaintiff has stated a colorable failure-to-protect claim against CO Selent by claiming that he stood by and failed to deploy his pepper spray while Plaintiff was beaten by another inmate for over two minutes. Accordingly, this separate claim will **PROCEED** against CO Selent in his individual capacity.

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 5] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Plaintiff's *Monell* claim concerning Defendants' alleged policy or custom of prohibiting officer intervention in inmate-on-inmate acts of violence until backup arrives will **PROCEED** against Defendants in their official capacities, and Plaintiff's failure-to-protect claim that CO Selent failed to intervene and/or deploy his pepper spray during Plaintiff's attack will **PROCEED** against CO Selent in his individual capacity;

6. The Clerk is **DIRECTED** to send a Plaintiff service packets (a blank summons and USM 285 form) for all Defendants;

7. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within 21 days of entry of this Order;

8. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

9. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed;

10. Defendants shall answer or otherwise respond to the complaint within 21 days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against him or her;

11. All other claims are **DISMISSED**; and

12. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within 14 days of any change in address may result in the dismissal of this action.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE